JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
LAW OFFICE OF JULIE A. MERSCH
701 S. 7th Street
Las Vegas, NV 89101
(702) 387-5868
Fax: (702) 387-0109
jam@merschlaw.com
*Attorney for Plaintiff, Abolfazl Hosseinpour*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ABOLFAZL HOSSEINPOUR,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, as Claims Administrator for the Safeway, Inc. Group Disability Income Plan; DOES I through V; and ROE CORPORATIONS I through V, inclusive,<br><br>Defendants | CASE NO.:<br><br><br><br>**COMPLAINT** |

Plaintiff ABOLFAZL HOSSEINPOUR, by and through his attorney, JULIE A. MERSCH, ESQ., complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for declaratory and injunctive relief and disability benefits owed, and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

2. This Court has subject matter jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1); and general federal jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district, pursuant to 29 U.S.C. § 1132(e)(2).

**GENERAL ALLEGATIONS**

4. Plaintiff ABOLFAZL HOSSEINPOUR (“HOSSEINPOUR”), at all times relevant, was a qualified participant in the Safeway, Inc. Group Disability Income Plan (“subject Plan”) within the meaning of 29 USCA § 1002(7) of ERISA.

5. Safeway, Inc. was Plaintiff's employer and is the Plan Administrator for the subject Plan.

6. Defendant LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("LIBERTY") is Safeway's agent and the designated Claims Administrator of the subject Plan. Thus, LIBERTY was and is a fiduciary with respect to the Plan as that term is defined pursuant to 29 U.S.C. § 1002(21)(A).

7. Upon information and belief, LIBERTY fully insures the subject Plan and performs claims handling functions for the subject Plan, including the ultimate decision of whether to accept, deny, or terminate a claim.

8. Pursuant to the terms of the subject Plan, HOSSEINPOUR made a claim for Short-Term Disability benefits as a result of disability beginning on or about July 13, 2015.

9. LIBERTY accepted and paid the STD benefits from on or about July 20, 2015 through February 10, 2016.

10. Pursuant to the terms of the subject Plan, Plaintiff made a claim to LIBERTY for Long-Term Disability ("LTD") benefits as of January 20, 2016. Specifically, while Plaintiff was covered under the subject Plan, he suffered and continues to suffer a disability as a result of, *inter alia*, 1) spondylitic disease from C4-C7 with clinical radiculopathy down his bilateral upper extremities and 2) multilevel lumbar stenosis causing left upper limb weakness and impaired spinal range of motion ("disabling medical conditions"). These conditions cause chronic pain, discomfort, headaches, depression, and anxiety (exacerbated in the workplace). Their resulting symptoms impair HOSSEINPOUR's ability to stand and sit for prolonged periods; concentrate; focus; and sustain work activity in his own occupation.

11. The "Test of Disability" set forth in the subject Plan provides for the payment of LTD benefits for the first twenty-four (24) months if a plan participant like HOSSEINPOUR is "unable to perform the Material and Substantial Duties of his Own Occupation [as performed in the national economy] as a result of Injury or Sickness" ("Own Occupation" definition). Thereafter, in order to continue to receive LTD benefits, the plan participant must be "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation"

("Any Occupation" definition). "Any Occupation," as defined in the subject Plan, means "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

12. HOSSEINPOUR's Own Occupation on July 13, 2015 was as a Pharmacy Manager. The Material and Substantial duties of this occupation include: pharmacy customer service; compounding and dispensing of prescribed medications, drugs, and other pharmaceuticals according to professional standards and state and federal legal requirements; training, supervision, scheduling, and assignment of duties to pharmacy employees; maintaining quality assurance, security, and disposal of drugs; maintaining pharmacy files, chart systems, and drug and supply inventory; and oversight of all applicable legal requirements and quality control procedures.

13. The Material and Substantial duties include "Physical Demands" of constant lifting of 1-10 pounds and occasional lifting of 11-20 pounds; frequent carrying of 1-10 pounds; frequent pushing/pulling of 1-10 pounds; constant knee- to shoulder-level reaching; occasional at- or above-shoulder level and overhead reaching; constant standing with sitting allowed on breaks; frequent walking; use of a step stool; constant neck rotation, bending of the head, and twisting; occasional bending/stooping; seldom crouching, squatting, and kneeling; and constant handling/grasping, fine finger manipulation, and repetitive motion.

14. The "Cognitive Demands" of this occupation of Pharmacy Manager include the ability to a) concentrate on a task over a period of time; b) quickly and accurately compare similarities and differences among information; c) evaluate information to determine compliance with standards; d) organize and analyze data or information; and e) meet deadlines.

15. LIBERTY initially denied HOSSEINPOUR's LTD claim on or about March 22, 2016.

16. Through counsel, HOSSEINPOUR appealed the denial of benefits on September 19, 2016. In support of his appeal, he submitted the results of a Functional Capacity Evaluation Report ("FCE Report") which established, *inter alia*, his inability to perform full-time work activity as a result of his disabling medical conditions.

17. On or about December 12, 2016, relying on the results of the FCE Report, LIBERTY overturned its denial of LTD benefits; paid HOSSEINPOUR past benefits minus its Social Security offset; and continued to pay LTD benefits through on or about August 4, 2017.

18. The Social Security Administration ("SSA") awarded Plaintiff Social Security Disability Benefits ("SSDIB") with HOSSEINPOUR's initial application in a Notice of Award letter dated July 1, 2016, with an established onset date of July 14, 2015. Upon LIBERTY's overturn of the denial, LIBERTY exercised its right under the subject Plan to offset the amount of HOSSEINPOUR's monthly LTD benefit payment by the amount of his SSDIB monthly payment.

19. In a letter dated August 4, 2017, and prior to the expiration of the twenty-four (24) month own occupation period, LIBERTY terminated LTD benefits on the basis that despite his disabling medical conditions, HOSSEINPOUR could perform his own occupation on a full-time basis ("Termination Letter").

20. In the Termination Letter, LIBERTY cited to the results of an Independent Medical Examination performed on HOSSEINPOUR by Andrew Kim, D.O. on May 17, 2017 ("IME Report"), to conclude that HOSSEINPOUR was not disabled under the subject Plan. The IME Report did not dispute the findings of the FCE Report and specifically stated that HOSSEINPOUR was unable to, *inter alia*, 1) "continuously sit for more than 20 minutes at a time" and 2) "continuous standing or walking should not exceed 15-20 minutes." Despite these sitting and standing restrictions, Dr. Kim concluded in the IME Report that HOSSEINPOUR could nevertheless perform "at a sedentary work capacity, on a full-time basis.. . ."

21. HOSSEINPOUR, via counsel, appealed the termination of benefits in a letter dated February 27, 2018 ("Appeal Letter"), arguing, *inter alia,* that LIBERTY did not fully and fairly assess his ability to work in his Own Occupation on a full-time basis, given a) Dr. Kim's findings as set forth in the IME Report; b) the FCE Report restrictions and limitations; c) HOSSEINPOUR's chronic pain; and d) the Physical and Cognitive demands of his own occupation as a Pharmacy Manager.

22. In its review of HOSSEINPOUR's appeal, LIBERTY referred the file for an

independent peer review by a physical medicine and rehabilitation physician Cyrus Kao, M.D. via its vendor, on March 21, 2018. Based on his paper review alone (without the benefit of an independent medical examination) as set forth in his report dated March 29, 2018, Dr. Kao rejected the findings set forth in the FCE Report and completely ignored the IME Report and concluded instead that "[t]he medical evidence supports that the claimant is able to sustain full-time capacity *without any restrictions and limitations.*" (emphasis added). Dr. Kao cited [in support of his ability to work without restrictions and limitations] to surveillance video of HOSSEINPOUR that showed *no activity* over the days surveilled, April 25 - 27th, 2017.

23. On April 12, 2018, LIBERTY denied Plaintiff's appeal ("Appeal Denial Letter"), citing Dr. Kao's determination that HOSSEINPOUR had no restrictions and limitations and was able "to sustain full-time [work] capacity." LIBERTY concluded, based on Dr. Kao's determination, that HOSSEINPOUR could perform his Own Occupation, even under the light physical demand level category. Ignoring the FCE Report and IME Report, LIBERTY concluded its analysis in its Appeal Denial Letter by stating:

> We conducted a thorough and independent review of Mr. Hosseinpour's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond August 4, 2017. However, the available information does not contain exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms remained of such severity, *frequency and duration* that they resulted in restrictions or limitations rendering him unable to perform the duties of his occupation after that date.

Appeal Denial Letter dated April 12, 2018 at 12 (emphasis in original).

24. In the Appeal Denial Letter, LIBERTY asserted that it had "fully considered the Social Security Administration's ruling" but distinguished its decision from that of the SSA's by asserting that there are different "terms and conditions" of the "Safeway [] Policy" and [LIBERTY had] more recent "medical and vocational assessments."

25. The Appeal Denial Letter advised HOSSEINPOUR that the decision was LIBERTY's final decision on the claim and further advised him of his right to file a federal lawsuit under ERISA.

/ / / /

/ / / /

**Claim for Relief: Wrongful Denial of Benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132 (A)(1)(B)**

26. Paragraphs 1-25 are incorporated by reference as if fully set forth herein.

27. LIBERTY has wrongfully terminated long-term disability benefits to HOSSEINPOUR in violation of the subject Plan, ERISA, and interpretive case law for reasons including, but not limited to:

a. In its Termination Letter, LIBERTY failed to address the Cognitive Demands of HOSSEINPOUR's Own Occupation as a Pharmacy Manager and whether he would be able to meet those demands given his multiple disabling conditions.

b. In its Termination Letter, LIBERTY failed to explain how HOSSEINPOUR could work full-time in his Own Occupation when the Material and Substantial Duties thereof required him to sit and stand for prolonged periods, which the IME Report and FCE Report concluded he could not do. In so doing, LIBERTY ignored its own subject plan provisions of "Own Occupation"; "Material and Substantial Duties"; and "Test of Disability."

c. In its Appeal Denial Letter, LIBERTY ignored the IME Report and FCE Report in favor of the paper review performed by Dr. Kao, even though he determined that HOSSEINPOUR had *no* restrictions and limitations to working. In so doing, LIBERTY failed to explain in any way why it accepted the Kao Report over the first-hand observations reflected in the FCE and IME Reports and the testing administered as reflected in the FCE Report, both of which determined multiple restrictions and limitations to working.

d. In denying HOSSEINPOUR's appeal, LIBERTY failed to fully and fairly consider his own statements in support of his inability to work, including his subjective reports of chronic pain, which were not exaggerated as supported by the IME Report and the results of the FCE Report.

e. LIBERTY failed to provide any reasonable basis on which it distinguished HOSSEINPOUR's SSDIB award from its decision to terminate benefits under the Own Occupation definition.

28. As a result of the foregoing actions and inactions, LIBERTY has failed to pay HOSSEINPOUR long-term disability benefits under the subject plan from August 5, 2017 through the present.

**PRAYER FOR RELIEF**

29. HOSSEINPOUR requests that this Court review the denial of benefits in this case and declare that he is entitled to: 1) long-term disability benefits from August 5, 2017 through the present and continuing, as set forth in the subject Plan; 2) reinstatement of any ancillary benefits under the subject plan to which he would be entitled retroactive to August 5, 2017; 3) an award of pre-judgment interest; and 4) payment of attorney's fees and costs associated with attempting to secure the benefits owed to her pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g)(1).

DATED this 25th day of July, 2018.

LAW OFFICE OF JULIE A. MERSCH

By: /s/ Julie A. Mersch
JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
701 S. 7th Street
Las Vegas, Nevada 89101
*Attorney for Plaintiff Abolfazl Hosseinpour*

W:\HOSSEINPOUR\PLDGS\COMPLAINT.wpd